NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CLEVELAND A. JOHNSON, | Civil Action No. 05-531 (KSH) |
| Plaintiff, | |
| v. | **OPINION** |
| CITY OF NEWARK, JOANNE WATSON, LIEUTENANT RICHARD MORENO, LIEUTENANT INEZ GONZALES, SERGEANT MARION REYNOLDS, SERGEANT WILLIAM PEREZ, DETECTIVE ROBERT PRACHARD, DETECTIVE ANTHONY ROBERTS, AND JOHN DOE 1-X. | |
| Defendants. | |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.  INTRODUCTION**

This matter arises out of the arrest and subsequent prosecution of Cleveland A. Johnson ("Johnson"), an employee of the City of Newark ("Newark"), for forgery and official misconduct.  Johnson alleges that the arrest and prosecution violated his civil rights and has brought suit under 42 U.S.C. § 1983 against Newark and various municipal employees: then-Corporation Counsel JoAnne Watson (Johnson's boss at the time of the arrest); and law enforcement personnel, Lieutenant Richard Moreno, Lieutenant Inez Gonzales, Sergeant Marion

Reynolds, Sergeant William Perez, Detective Robert Prachard, and Detective Anthony Roberts ("Individual Defendants"). Joanne Watson ("Watson"), as Corporation Counsel, was the chief legal officer for Newark and the head of the city's Department of Law ("Law Department"). The other individual defendants are all Newark police officers.

Before the Court is a motion for summary judgment brought collectively by all defendants.

## II.  BACKGROUND

Cleveland Johnson was employed by the Law Department from 1998 to 2006. (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 2.) He worked in various sections of the Law Department during his tenure there. From 1998 until 2000 Johnson was a paralegal in the Municipal Prosecutor's Office. (Id. ¶ 3) Johnson later worked in the real estate section and the claims investigation section of the Law Department. (Id. ¶¶ 10, 13.) He claims that he had work related problems with Watson from the time she was appointed Corporation Counsel in January of 2001. (Id. ¶¶ 16, 17.)

Johnson was a frequent patron of the Nutley Pet Store in Belleville, NJ, and struck up an acquaintance with one of its employees, Cheryl Beverly. (Dep. of Cheryl Beverly's Ex. J to Diego Navas Decl. 9.) At some point in 2000, Cheryl Beverly told Johnson that her husband Timothy had been the victim of identity theft. (Id. at 11.) The thief had apparently received a number of traffic tickets and warrants using Timothy Beverly's stolen license. (Statement of Timothy Beverly Ex. G to Navas Decl.) One of the traffic tickets was issued by Newark. (Id.) Johnson offered to help. (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 5.)

There is a dispute concerning exactly what Johnson undertook to help the Beverlys. He

states that he advised them to appear at the Municipal Prosecutor's Office of the City of Newark, where he worked at the time, so that the "matter could be looked into pursuant to protocol."  (Id.) Johnson's position is that while he worked at the Municipal Prosecutor's Office he handled "various municipal court matters, including cases in which a victim alleged that he or she received Court notices for traffic violations committed by someone who had apparently stolen their [sic] identity and falsely claimed to be the victim when issued a traffic ticket."  (Id. ¶ 3.) The defendants claim that Johnson was not authorized to conduct investigations into such matters.  (Decl. of JoAnne Watson Ex. L to Navas Decl. ¶ 7.)  According to Johnson, Cheryl Beverly came to the Municipal Prosecutors Office at some point in 2000 to report her husband's identity theft problem, and he personally delivered a letter (the "Johnson Letter") to Cheryl Beverly that explained that the Municipal Prosecutors Office was aware of the stolen identity issue.  (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 6.)  There is disagreement about what became of the Johnson Letter.

It is uncontested that well after these events, Timothy Beverly was pulled over by Paulsboro Police Officer Dave Forand ("Officer Forand") on January 2, 2003 for an expired registration sticker.  (Decl. of Officer Dave Forand Ex. O to Navas Decl. ¶¶ 3, 4.)  In the course of the stop, Officer Forand learned that Timothy Beverly had a suspended license and three outstanding warrants for traffic violations.  (Id ¶ 4.)  He placed Timothy Beverly under arrest and transported him to the Paulsboro Police Headquarters.  (Id ¶ 5.)  Timothy Beverly told Officer Forand that he was a victim of identity theft and produced a letter (the "Beverly Letter") which stated that the City of Newark Municipal Prosecutor's Office was aware of the theft.  (Id. ¶ 6) Officer Forand contacted the Law Department and faxed them a copy of the Beverly Letter.  (Id.)

He says that the Law Department advised him that "they did not believe the letter was credible." (Id. ¶ 7.)  The Paulsboro Police Department made and kept a photocopy of the letter and gave the original back to Timothy Beverly when he was released.  (Id. ¶ 9.)  According to Timothy Beverly, the letter that he showed the Paulsboro police no longer exists.  (Decl. of Timothy Beverly Ex. C to Navas Decl. ¶ 15.)  So the record evidence consists of the faxed copy of the letter produced by the Law Department and the photocopy produced by of the Paulsboro Police.

The Beverly Letter (Ex. D to Navas Decl.), dated September 9, 2002, was typed on letterhead from the City of Newark's Department of Law and lists as Corporation Counsel not JoAnne Watson, but Michelle Holler-Gregory, who preceded Watson and had left the position as of that date.  The exact text of the letter reads as follows:

RE: Traffic (Stolen Identity)

Dear Mr. Beverly,

       Please be advised that this office has been made aware of the stolen identity matters.  I am sorry for the timely delay, however our office readily awaits assistance from other agencies regarding the defendants last know address.  Kindly take note I am requesting additional materials from the Department of Motor Vehicles as well as contacting the police officers who issued the traffic summonses for Newark Municipal Court.
       Upon receipt of a court date, I will inform you of how our office will proceed.  Should you have any inquiries regarding this matter, do not hesitate to contact myself directly at 973-733-4750.
       Your cooperation and patience is greatly appreciated.

                       Very truly yours,

                       Claudia J Francis
                       Chief Municipal Prosecutor,

                       By:_____
                       Cleveland A. Johnson

(Ex. D to Navas Decl.)

The Beverly Letter is signed Cleveland A. Johnson.

      The parties take opposing factual positions about the Beverly letter. Based on the date and the letterhead, the defendants claim that the letter is a fake put together by Johnson. (Defendants' Brief in Support of Motion for Summary Judgment 15-16.) Johnson claims that its facial irregularities can be explained in two possible ways. One explanation is that the Beverly Letter and the Johnson Letter are the same instrument. If so, then the date on the Beverly letter was merely a typographical error because he drafted the letter he sent to the Beverlys in 2000. (Plaintiff's Brief in Opposition to Motion for Summary Judgment 19.) The second explanation is that the Beverly Letter was an altered copy of the Johnson Letter. Johnson claims that the Beverlys may have changed the original date on the Johnson letter. (Id.)

      At some point after the Law Department received the fax of the Beverly Letter, Watson contacted Richard Monteilh, Newark's Business Administrator and "recommended that the matter be investigated." (Decl of JoAnne Watson Ex. L to Navas Decl. ¶ 8) She was later advised that Richard Monteilh contacted Newark's Chief of Police and requested that the police department look into the source of the letter. (Id. ¶ 10.) Sgt. Marion Reynolds of the Newark Police Department was assigned to conduct a confidential investigation. (Decl. of Sgt. Marion Reynolds Ex. K to Navas Decl. ¶ 3.)

      The parties dispute how this investigation was conducted. Johnson states that he was initially questioned by Detective Richard Hill of the Newark Police Department in January of 2003, and that he told Hill he did not "author, write or sign the Beverly letter." (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 14.) Johnson claims that Detective Hill asked him to

provide a letter confirming that he was not working at the Municipal Prosecutor's Office on the date of the letter.  (Id.)  Johnson requested and got a letter from Watson that confirmed that as of September 9, 2002,  he was not assigned to the Municipal Prosecutor's Office.  (Letter from JoAnne Watson Ex. B to Oh Decl.)

The defendants state that Detective Anthony Roberts of the East Detective Squad interviewed both Timothy and Cheryl Beverly about the Beverly Letter on March 21, 2003 and they gave sworn statements.  (Decl. of Det. Anthony Roberts Ex. M to Navas Decl. ¶¶ 3,4.)  Cheryl Beverly told Detective Roberts that she obtained the Beverly Letter from Cleveland A. Johnson.  (Statement of Cheryl Beverly Ex. H to Navas Decl.)  She further stated that she did not know the letter was fraudulent and she did not pay Johnson for the letter.  (Dep. of Cheryl Beverly Ex. J to Navas Decl. 23.)  Timothy Beverly said that he received the Beverly letter from his wife and that she told him that Johnson gave it to her.  (Statement of Timothy Beverly Ex G. to Navas Decl.)  He also stated that he did not know that the letter was fraudulent until the Paulsboro police told him that it was.  (Id.)

After Det. Roberts questioned the Beverlys, Sgt. Reynolds informed Corporation Counsel Watson of the status of the investigation, and she instructed him to get a positive identification from Cheryl Beverly of the person who gave her the letter.  (Decl. of Sgt. Marion Reynolds Ex. K to Navas Decl. ¶ 9.)  So on March 28, 2003, Cheryl Beverly came to the Newark Police Department and Reynolds showed her a picture of Johnson.  She identified him as the person who gave her the Beverly letter, and signed the back of the photograph and made a notation of the time and date.  (Decl. of Det. Prachar Ex. N to Navas Decl. ¶¶ 3-5.)

At some point after this photo identification, Sgt. Reynolds claims he contacted Assistant

Prosecutor John Anderson of the Essex County Prosecutor's Office, and was told that there was enough evidence to "establish a prima facie case for Forgery and Official Misconduct against [Cleveland Johnson]." (Decl. of Sgt. Marion Reynolds Ex. K to Navas Decl. ¶ 11, 12.) Notwithstanding, two months passed after this discussion before there was another reported action in the investigation. (See Id. ¶ 10-13.)

On May 21, 2003, Johnson filed a complaint for hostile work environment against one of his superiors at the Law Department, Shirlene Murray.[1] According to Sgt. Reynold's sworn declaration, the following day he and Det. Robert Prachar "responded" to the offices of the Law Department. (Decl. of Sgt. Marion Reynolds Ex. K to Navas Decl. ¶ 13.) The officers first spoke with Watson and then approached Johnson and requested that he accompany them to a nearby police station. (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 19; Decl. of Det. Robert Prachar Ex. N. to Navas Decl. ¶¶ 6, 7.) At the station Johnson was read the Miranda warnings. (Decl. of Det. Robert Prachar Ex. N to Navas Decl. ¶ 7.) Then Sgt. Reynolds and Detective Sgt. William Perez questioned him about the Beverly Letter. (Decl. of Sgt. Reynolds Ex. K to Navas Decl. ¶ 14.)

According to Johnson, the officers showed him the letter a few times and asked if the signature on the letter was his. (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 20.) The parties dispute about how Johnson responded. Johnson claims that he told the officers that the signature looked like his signature but that he did not actually sign the letter. (Id.) Sgt. Reynolds claims that Johnson admitted that the signature on the Beverly Letter was his. (Decl. of Sgt. Reynolds

---

[1]Shirlene Murray was a senior administrative analyst at the Law Department and according to Johnson had a "good working relationship" with Watson. (Plaintiff's Brief in Opposition to Motion for Summary Judgment 27.)

Ex. K to Navas Decl. ¶ 14.)

Johnson was charged with forgery (N.J.S.A. 2C:21-1) and official misconduct (N.J.S.A. 2C:30-2).   He was processed and held for one night in Newark City jail.  (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 21.)

As a result of his arrest Johnson was suspended from the Law Department, and Watson initiated departmental charges against him. (Decl. of JoAnne Watson Ex. L to Navas Decl. ¶ 13 and 15.A hearing was held on these charges, which Johnson did not attend.  (Id. at ¶ 14.)  The State of New Jersey's Department of Personnel found him guilty of the following: conduct unbecoming a public employee, violation of criminal law, and misuse of public property and imposed  a six-month "time served" suspension from the date of his arrest.  (Final Notice of Disciplinary Action Ex. E to Navas Decl.)

The criminal charges against him were ultimately dismissed by the prosecutor.  In April of 2004,  Johnson returned to his job at the Law Department.  Later, he was discharged as a result of his failure to comply with Newark's residency requirements for city employees.  (Id. at 27.) (Decl. of Cleveland Johnson Ex. A to Oh Decl ¶ 22, 24 and 27.)

Johnson then filed this lawsuit. He has stated in his brief that he is not pursuing a hostile work environment claim or any claims related to the adverse disciplinary action.  (Plaintiff's Brief in Opposition to Motion for Summary Judgment 28.)

The Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331.


## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The initial burden is on the to demonstrate that the plaintiff has failed to establish one of the essential elements of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). Once the moving party meets this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead the nonmoving party must present specific facts showing that there is a genuine issue for trial. Id. In making its determination the court "must give the nonmoving party the benefit of all reasonable inferences." Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995), cert denied, 515 U.S. 1159 (1995).

## III.  DISCUSSION

### _____A. Unserved Individual Defendants: Lieutenant Inez Gonzales and Sergeant William Perez

Two of the defendants, Lieutenant Inez Gonzales and Sergeant William Perez, were never served with the complaint in this case. They ask the Court to dismiss the complaint pursuant to Fed. R. Civ. P. 4(m). Johnson has not offered opposition. The Court dismisses the complaint as to these defendants.

### B.  Remaining Individual Defendants : JoAnne Watson, Lieutenant Richard Moreno,

**Sergeant Marion Reynolds, Detective William Prachard, Detective Anthony Roberts**

**1. Section 1983**

The basis for Johnson's lawsuit against the individual defendants is 42 U.S.C. § 1983, which, according to the Supreme Court, "affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law." Parratt v. Taylor, 451 U.S. 527, 535 (1981). To succeed in a § 1983 action, a plaintiff must demonstrate: 1) that the action occurred "under color of law"; and 2) that the action is a deprivation of constitutional or a federal statutory right. The individual defendants here, all municipal employees, do not contest that they were acting "under color of law" – their challenge is that Johnson has not alleged a deprivation of a constitutional or federal statutory right.

Johnson alleges that he was arrested, prosecuted, and confined without probable cause. (Plaintiff's Compl. ¶ 28) Claims for unlawful arrest, false imprisonment and malicious prosecution in violation of the Fourth Amendment can be brought pursuant to § 1983. See Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995); Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). To prove an unlawful arrest claim the plaintiff must show that he was arrested without probable cause. Orsatti, 71 F.3d at 483. To prove a false imprisonment claim the plaintiff must show that he was detained as a result of an arrest that was not based on probable cause. Groman, 47 F.3d at 636.

Analytically, then, the critical element of Johnson's unlawful arrest and false imprisonment claims is the absence of probable cause. The issue arises whether the Court decides the question of whether he was arrested without probable cause and detained without

-10-

probable cause, or a jury does.  "In a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury, but where no genuine issue as to any material facts exists and where credibility conflicts are absent, summary judgment may be appropriate." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

The record reflects competing versions of certain events leading up to Johnson's arrest, along with  factual issues about how the investigation of Beverly letter was conducted.  Johnson points out that the police never had the original copy of the letter, casting doubt on the reliability of an investigation resulting in the charge of forging a document that the police officers never actually examined first-hand.  Also, the only persons questioned about the letter before the decision was made to arrest Johnson were the Beverlys, one of whom had produced a letter deemed to be fraudulent, suggesting their credibility was questionable.  And assuming  the confusion about the Beverly letter was resolved, there remains a dispute about whether Johnson ever possessed the authority to investigate stolen identity matters.  If Johnson could undertake to investigate stolen identity matters then the letter might be valid.

Furthermore, Johnson was arrested without a warrant even though no exigent circumstances appeared to exist, throwing the issue of probable cause into high relief.  For Fourth Amendment purposes, an arrest warrant is not absolutely required to arrest a person in a public place if the police have probable cause.  Gerstein v. Pugh, 420 U.S. 103, 113 (1975).  However, the Supreme Court has expressed a strong preference for the use of arrest warrants whenever it is feasible.  Id.  There is nothing in the record that indicates that it was not feasible for the police to go to a neutral judicial authority for an arrest warrant.  The "smoking gun" was  one offending document and the circumstances surrounding it occurred about five months earlier.  Also, two

months had elapsed between the last event in the investigation  –  Sgt. Reynolds's discussion with Assistant Prosecutor Anderson – and there is no support in the record that an exigency had arisen.

Because there is no arrest warrant, there is no affidavit  that sets forth the basis for probable cause, and so the record does not reflect what facts the defendants relied upon to make the arrest of Johnson.  What appears is that the arresting officers "responded" to the Law Department of the City of Newark, and spoke to Watson, and went over to Johnson and arrested him.  This Court is not in a position to resolve the competing versions of certain events and the lack of factual support for others.  As such, summary judgment in defendants' favor on Johnson's unlawful arrest and false imprisonment claims is denied.

To prove his malicious prosecution claim, Johnson must establish the elements of the common law tort of malicious prosecution and prove that a seizure occurred as a result of criminal action instituted against him.  Gallo, 161 F.3d at 222.  Under New Jersey law, elements of the common law tort of malicious prosecution are: (1) a criminal action was instituted by the defendant against the plaintiff, (2) the defendant acted maliciously or for a purpose other than bringing the criminal defendant to justice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  Lind v. Schmid, 67 N.J. 255, 262 (1975).

Johnson has alleged a *prima facie* case for malicious prosecution insofar as a criminal action was instituted against him when he was arrested on May 22, 2003 and charged with forgery and official misconduct.  (Decl of Sgt. Reynolds Ex K to Navas Decl. ¶ 13.)  An arrest that results in a detention is a seizure,  Gallo, 161 F.3d at 223, and  Johnson was detained in jail for one night

as a result of criminal charges that had been filed against him.  (Dec. of Cleveland Johnson Ex A to Oh Decl. ¶ 21.)  The criminal charges that were brought against Johnson were dismissed on the motion of the prosecutor.  (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 22.)  A formal abandonment of criminal proceedings by a public prosecutor qualifies as a termination in the plaintiff's favor.  Hilfirty v. Shipman, 91 F.3d 573, 579-81 (3d Cir. 1996).

As to the second element – that defendants "acted maliciously or for a purpose other than bringing the [criminal] defendant to justice," Lee v. Milach, 847 F.2d 66, 70 (3d Cir. 1988) – Johnson contends that Watson had him investigated and eventually arrested as a pretext to remove him from his position at the Law Department.  (Decl. of Cleveland Johnson Ex. A to Oh Decl. ¶ 18.)  He states that because of civil service protection he could only be removed from his position if he was arrested or failed to satisfy the city's residency requirements.  (Plaintiff's Brief in Opposition to Motion for Summary Judgment 9.)  Johnson points to the fact that he was arrested one day after he filed claim against Shirlene Murray, his supervisor, as circumstantial evidence that his arrest was really a pretext to remove him from his position.  (Plaintiff's Brief in Opposition to Motion for Summary Judgment 27.)

The defendants have failed to establish in the record before the Court who made the critical decision to arrest Johnson.  It appears that Watson played some role, but the extent of what she did is unclear.  The officers admit that they "responded" to the Law Department to arrest Johnson.  (Decl. of Sgt. Reynolds Ex K to the Navas Decl. ¶ 13), indicating they were summoned.  Johnson also states that the officers conferred with Watson before they approached him and asked him to come to the police station.  (Decl. of Cleveland Johnson Ex. A to the Oh Decl. ¶19.)  Relative to the "malice" element of Johnson's claim is the motivation of the person who initiated

-13-

the criminal action against Johnson.  Without this information the Court cannot decide whether

Johnson's prosecution was motivated by a purpose other than bringing a criminal defendant to

justice. There are, in short,  genuine issues of fact concerning Johnson's malicious prosecution

claim requiring that the Court deny defendants summary judgment.

### 2. Qualified Immunity

The individual defendants have raised the affirmative defense of qualified immunity.

Under this defense, "[g]overnment officials performing discretionary functions are 'shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  Sharrar v. Felsing, 128

F.3d 810, 826 (3d Cir. 1997)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified

immunity analysis proceeds in two stages.  First, looking at the evidence if in the light most

favorable to the plaintiff the Court must determine if "the facts alleged show the officer's conduct

violated a constitutional right."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Second, the Court must determine if that right was "clearly established" at the time of the

incident.  Anderson v.Creighton, 483 U.S. 635, 640 (1987).  In making this determination the

Court must decide whether the "contours of the right [are] sufficiently clear that a reasonable

official would understand that what he is doing violates that right."  Id.

The first prong of the qualified immunity defense applies to whether the facts Johnson has

alleged establish that the individual defendants violated a constitutional right.  As discussed above

there are genuine issues that need to be resolved about how the decision was made to investigate

him and ultimately to place him under arrest, which resulted in his detention and the criminal

prosecution.  These disputed predicate facts for determining probable cause raise jury questions.

For this reason, the Court cannot decide the first prong at this time.

But a finding that the defendants have satisfied either prong of the analysis is sufficient to

grant summary judgment on the defendants' qualified immunity defense.  See Saucier v. Katz,

533 U.S. 194, 201 (2001).  Moving to the second prong, which is governed by an objective test,

the question becomes whether a reasonable official would have known that his or her conduct was

unlawful.  Sharrar v. Felsing, 128 F.3d at 826.

The reasonableness of an official's actions and beliefs is typically a question of law for the

court.  Id. at 828.  However, the Third Circuit has held that "a jury can evaluate objective

reasonableness when relevant factual issues are in dispute."  Curley v. Klem, 298 F.3d 271, 278

(3d Cir. 2002); see also Harvey v. Plains Township Police Department, 421 F.3d 185, 194 n.12

(3d Cir. 2005); Carswell v. Borough of Homestead, 381 F.3d 235, 242, 243 (3d Cir. 2004).

> The evaluation of a qualified immunity defense is appropriate for summary judgment
> because the court's inquiry is primarily legal: whether the legal norms the defendant's
> conduct allegedly violated were clearly established.  Nevertheless, some factual
> allegations, such as how the defendant acted, are necessary to resolve the immunity
> question.  [T]his admittedly fact-intensive analysis must be conducted by viewing the
> facts alleged in the light most favorable to the plaintiff.  Finally, when qualified
> immunity is denied, any genuine disputes over the material facts are remanded, to be
> settled at trial.

Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000)(citations omitted).

Along with the necessity of fact-finding among disputed facts, a critical factor that weighs

against granting these defendants qualified immunity is that they moved collectively for summary

judgment.  Their submissions in support fail to distinguish between the actions of the police

officers and the actions of the Watson for purposes of the required legal analyses about their

-15-

respective actions and what legal protections are available to them.  As discussed above, it is

unclear who made the critical decision to arrest Johnson.  (See supra pp. 13-14.)  As a result, the

Court cannot make the determination of qualified immunity on this record, which may have to

await a full exposition of the facts through trial, the same facts in essence that will need to be

assessed in deciding whether probable cause – and therefore no constitutional violation – existed

when Johnson was arrested and jailed.


**_____C. The City of Newark**

     The City of Newark argues that it cannot be held liable under 42 U.S.C. § 1983 unless a

policy or custom of the city caused a constitutional deprivation.  The Supreme Court has held that

municipalities "may be held liable in a § 1983 action only in limited circumstances."  Monell v.

Dep't of Soc. Serv., 436 U.S. 658, 688-689 (1978).  A municipal government may only be held

liable when an official custom or policy leads to a constitutional deprivation.  Montgomery v.

DeSimone, 159 F.3d 120 (3d Cir. 1998).  A policy may only occur when a person with authority

issues an official proclamation, policy, or edict.  See Andrews v. City of Philadelphia, 895 F.2d

1469, 1480 (3d Cir. 1990) (citations omitted).

     The "policy-maker" must have unreviewable authority to make a decision.  Hernandez v.

Borough of Palisades Park Police Dep't, 58 Fed. Appx. 909, 912 (3d Cir. 2003)(citing Pembaur v.

City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality op.)).  Significantly, the

Supreme Court has held that "municipal liability may be imposed for a single decision by

municipal policymakers under appropriate circumstances."  Pembaur, 475 U.S. at 480.  And,

"municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Id. at 483.

The defendants claim that Johnson has failed to prove the existence of a policy or custom that led to a constitutional violation.  Johnson argues in his opposition brief that the record facts establish that "the nature and character of the investigation of Plaintiff indicates that it was based on a custom or policy of the City of Newark of allowing Corporation Counsel to participate in the investigation of persons whom she has requested to be investigated by the Newark Department of Police."  (Plaintiff's Brief in Opposition to Motion for Summary Judgment 26.)  The defendants reply that "[t]he Corporation Counsel is the Chief Legal Officer of the City of Newark and there is absolutely nothing improper for that person to request that the Police Department conduct an investigation when she believes that one of her employees has violated the law."  (Defendants' Reply Brief in Support of Motion for Summary Judgment 12-13.)

Watson as Corporation Counsel and chief legal officer for Newark is a policymaker because she possessed unreviewable authority to make a decisions for the city, establishing a legal basis for holding the Newark liable for her decisions in certain circumstances.  When a policymaker makes a deliberate choice among various alternatives that leads to a constitutional deprivation the municipality can be held liable for his or her decision.  Pembaur, 475 U.S. at 483.  Watson's decision to undertake an investigation may be logical, but the extent of how much direction she gave is not clear; further, and again the record is unclear, she may have ordered

-17-

Johnson's arrest.[2]  This is all evidence from which a constitutional deprivation attributable to the City of Newark might be determined.  As a consequence, based on this record the Court denies summary judgment in favor of the City of Newark.


## IV. Conclusion

_____ For the foregoing reasons the defendants' motion for summary judgment is denied.  An appropriate order will be entered.


/s/ Katharine S. Hayden
_____ **Katharine S. Hayden U.S.D.J.**

Dated: December 28, 2006

---

[2]Complicating matters further,  the City of Newark is represented by Corporation Counsel and on the brief filed by the defendants, Watson is named as one of the authors.

-18-